(C. D. 388)

Washington State Liquor Control Board v. United States

United States Customs Court, Third Division

(Decided October 24, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks* and *Charles J. Miville*, special attorneys), for the defendant.

Before Cline, Evans, and Keefe, Judges; Evans J., not participating

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain Scotch whisky which was withdrawn from warehouse after the effective date of the Canadian Trade Agreement, published in T. D.

48033. Duty was assessed on the merchandise at the rate of $2.50 per proof gallon, which is the rate applicable to whisky under paragraph 802, schedule II of the Canadian Trade Agreement, plus $2 per gallon under the Liquor Taxing Act of 1934, and plus countervailing duty at the fate of $0.061433 per gallon under section 303 of the Tariff Act of 1930.

The protest is directed against the assessment of duty under the Liquor Taxing Act of 1934, but a timely amendment was filed containing the following claim:

Assessment of countervailing duty on the whisky covered by this protest was illegal and contrary to the provisions of the Canadian trade agreement of November 15, 1935 (T. D. 48033) and secs. 350 (a), tariff act of 1930, as amended. Also, it was in violation of a treaty entered into between the US and Great Britain and proclaimed December 22, 1815 (8 Stat. 228). Therefore, refund of this tax should be made.

At the trial plaintiff offered in evidence the appraiser's report, reading as follows:

The merchandise the subject of this protest consists of Scotch whiskey, manufactured and shipped from Scotland, and contained in casks. Advisory return for duty was at $5.00 per proof gallon, Pars. 802 and 811, Act of 1930, or at $2.50 per proof gallon on that withdrawn from Customs custody after January 1, 1936 (T. D. 48033). Following T. D. 34466 countervailing duty at the rate of 3d per British proof gallons was assessed.

No other evidence was introduced. Counsel for the plaintiff, in his brief, does not attack the assessment of duty at the rate of $2 per gallon under the Liquor Taxing Act of 1934 and does not rely on the claim in the amendment to his protest that the assessment of the countervailing duty is in violation of the treaty between the United States and Great Britain proclaimed on December 22, 1815 (8 Stat. 228). He bases his argument on the sole ground that the generalization clause in section 350 (a) (2) of the Tariff Act of 1930, as amended by the act of June 12, 1934 (48 Stat. part 1, page 943, T. D. 47117), grants to all countries the same rates of duty as may be granted to a country having a trade agreement with the United States, and that the maximum rate of duty, under the Tariff Act of 1930, as amended by trade agreement, which may be legally assessed on the merchandise is $2.50 per proof gallon, which is the rate applicable in the Canadian Trade Agreement proclaimed in T. D. 48033.

Section 303, upon the authority of which the collector assessed the countervailing duty on the merchandise in this case, reads as follows:

Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the

provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

Section 350 (a), which contains the amendment to the Tariff Act of 1930 upon which plaintiff relies, authorizes the President to enter into trade agreements with other governments for the purpose of extending foreign markets, etc. The statement in section 350 (a) (2) upon which plaintiff specially relies reads as follows:

The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly or indirectly: *Provided*, That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

Article I of the Canadian Trade Agreement grants to the government of Canada "unconditional and unrestricted most-favored-nation treatment" as shown in the first paragraph of that section, reading:

The United States of America and Canada will grant each other *unconditional and unrestricted most-favored-nation treatment* in all matters concerning customs duties and subsidiary charges of every kind and in the method of levying duties, and, further, in all matters concerning the rules, formalities and charges imposed in connection with the clearing of goods through the customs, and with respect to all laws or regulations affecting the sale or use of imported goods within the country. [Italics ours.]

Article IV of the trade agreement with Canada reads as follows:

Articles the growth, produce or manufacture of Canada, enumerated and described in Schedule II annexed to this Agreement, shall, on their importation into the United States of America, be exempt from *ordinary* customs duties in excess of those set forth and provided for in the said Schedule. *The said articles shall also be exempt from all other duties, taxes, fees, charges, or exactions, imposed on or in connection with importation, in excess of those imposed on the day of the signature of this Agreement or required to be imposed thereafter under laws of the United States of America in force on the day of the signature of this Agreement.*

Schedule II and the notes included therein shall have full force and effect as integral parts of this Agreement. [Italics ours.]

Schedule II, above referred to, imposes duty at the rate of $2.50 per proof gallon under paragraph 802 on "whiskey of all types and classes," with the following proviso:

Provided, That this provision shall not apply to any whiskey consisting in whole or in any part of distilled spirits which have not been aged in wooden containers at least four years prior to the date the whiskey is entered, or withdrawn from warehouse, for consumption.

The plaintiff contends that inasmuch as "unconditional and unrestricted most-favored-nation treatment" is granted to the products of Canada by the trade agreement, purchasers of Canadian merchandise in the United States are entitled to import goods without the payment of countervailing duty if merchandise of the same kind from any country in the world can be imported into the United States without the payment of such duty, citing Bill Co. v. United States, 27 C. C. P. A. 26, C. A. D. 57. In that case it was held that bicycle parts imported from Germany were dutiable at the rates applicable to any other country on importations into the United States, notwithstanding the fact that the Secretary of the Treasury had promulgated higher countervailing duty rates on bicycle parts from Germany, under the authority of the terms of the proviso to paragraph 371 of the Tariff Act of 1930. The court held that the proviso did not repeal the unconditional most-favored-nation provisions of the treaty between the United States and Germany and that the countervailing rates of duty on bicycle parts from Germany proclaimed by the Secretary of the Treasury were not applicable.

The principle decided in Bill Co. v. United States, is not the same as that in the instant case because it does not appear that at the time the merchandise in this case was withdrawn there existed an unconditional most-favored-nation treaty between Great Britain and the United States, but plaintiff urges that, since whisky from Canada is permitted entry into the United States without the assessment of countervailing duty, whisky produced in Great Britain is subject to the same treatment by virtue of the above-quoted provision in section 350 (a) (2) granting to all countries the advantages derived by any country, except Cuba, by a trade agreement, provided that the President had not suspended the application of the provisions of the trade agreement to any particular country because of its discriminating treatment of American commerce, etc.

The defendant contends that the generalization clause in section 350 (a) (2) extends to all nondiscriminating nations the "proclaimed duties and other import restrictions" only and that it does not affect any rates of duty not proclaimed in the trade agreement, citing George E. Warren Corp. v. United States, 25 C. C. P. A. 450, T. D. 49533. In that case the importers claimed that coal imported from the Union of Soviet Socialist Republics was exempt from duty by

virtue of the generalization clause in section 350 (a) (2) in connection with The Netherlands Trade Agreement. No rate of duty on coal was proclaimed in the trade agreement but the importers claimed that, by virtue of the unconditional most-favored-nation treatment given to The Netherlands in the trade agreement, coal from The Netherlands should be admitted free because imports of coal from some other nations were admitted free and that accordingly imports of coal from Russia should be admitted free. The court held that the duty on coal was not affected by the trade agreement, stating at page 460:

* * * It is clear that, by the quoted provision of the statute, the duties and import restrictions agreed upon and proclaimed by the President *become applicable to the articles named in the schedule*, not only when they are imported from the country with which the proclaimed agreement exists, but when imported, directly or indirectly, from any other country not discriminating against the United States, but we are of the opinion that in both instances only the articles and duties specified in the proclamation are affected. * * * [Italics quoted.]

The issue in the case herein involved appears to have been settled in the decision cited. The court said that only the articles *and duties* specified in. the proclamation are affected. The duties which the plaintiff claims are repealed by the trade agreement are not "specified in the proclamation," and, therefore, are not affected by the agreement.

The defendant argues further that the Canadian Trade Agreement does not decrease any rates of duty on whisky from Canada except those relating to ordinary customs duties and that the only reference to other duties is contained in article IV which indicates that it was the intent to exempt only such duties as are "*in excess* of those imposed on the day of signature" of the agreement. The application of the trade agreement on Canadian products is not involved in this case and therefore this contention is not considered.

We hold that the collector lawfully assessed the countervailing duties in this case under the authority of section 303 of the Tariff Act of 1930. The protest is overruled. Judgment will be entered in favor of the defendant.